IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| ERIC S. MOORE, JR., *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 3:14cv832 (DJN) |
| | ) | |
| LAW OFFICES OF SHAPIRO, BROWN & ALT, | ) | |
| LLP, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Sixty-two individuals (collectively "Plaintiffs") have brought both individual and class

claims against the Law Offices of Shapiro, Brown & Alt, LLP ("SBA") and Professional

Foreclosure Corporation of Virginia ("PFC") (collectively "Defendants"), alleging that

Defendants violated both common law duties and various Fair Debt Collection Practices Act

("FDCPA") provisions when foreclosing on Plaintiffs' homes.  At issue here, Plaintiffs allege

that Defendants breached their fiduciary duty to Plaintiffs by proceeding with foreclosure

without satisfying all conditions precedent to the foreclosure.  Additionally, Plaintiffs allege that

Defendants violated both their common law fiduciary duty and the FDCPA by charging

excessive title examination fees related to those foreclosures.[1]

This matter comes before the Court by consent pursuant to 28 U.S.C. § 636(c)(1) on

Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Class Complaint (ECF No. 68)

in which Defendants move to dismiss Count 1 and Count IV of Plaintiffs' Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief

---

[1]      Plaintiffs also have brought four other claims — both on a class and individual basis —
for violations of the FDCPA that are not the subject of Defendants' Motion.

can be granted. Having reviewed the parties' submissions and for the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' Motion (ECF No. 68).

## I.  BACKGROUND

When resolving a motion for judgment on the pleadings, the Court construes the allegations in favor of the non-moving party. Fed. R. Civ. P. 12(c); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004). Accordingly, for the purpose of resolving Defendants' Motion, the Court finds the relevant facts as follows.

Plaintiffs all owned properties that Defendants either attempted to or did foreclose upon. (First Am. Class Compl. ("Am. Compl.") (ECF No. 65) ¶ 5.) Defendant SBA is a law firm and Defendant PFC is a limited liability company, and both are located in Virginia Beach, Virginia. (Am. Compl. ¶¶ 6-7.) Defendants engage in debt collection and in instituting foreclosure proceedings on mortgage loans. (Am. Compl. ¶¶ 9-10.)

Attorneys and principals of Defendant SBA created Defendant PFC to control the foreclosure process and collect trustee fees and attorneys' fees in foreclosure sales. (Am. Compl. ¶ 17.) Attorneys and principals from Defendant SBA provided Defendant PFC decision-making and management functions. (Am. Compl. ¶ 19.) Defendant PFC does not have a separate office from Defendant SBA and has little to no income derived outside of Defendant SBA. (Am. Compl. ¶¶ 20, 22.) Defendant PFC also maintains no separate assets. (Am. Compl. ¶ 20.) Defendant PFC does not have any business independent from Defendant SBA. (Am. Compl. ¶ 24.) Defendant SBA only acts as a substitute trustee for deeds of trusts when Defendant SBA has been retained for debt collection and foreclosure proceedings. (Am. Compl. ¶ 23.) All monies from Defendant PFC's foreclosure sales ultimately return to Defendant SBA, leaving Defendant PFC undercapitalized. (Am. Compl. ¶ 24.) Personnel and resources used in

2

proceeding with these foreclosures generally are maintained under Defendant SBA's name. (Am. Compl. ¶ 28.) Additionally, Defendant SBA prepared for Defendant PFC both letters mailed to customers and documents submitted to state courts. (Am. Compl. ¶ 29.)

The Federal Housing Administration ("FHA"), under the Department of Housing and Urban Development ("HUD"), insures loans made by lenders to qualifying homebuyers. (Am. Compl. ¶ 30.) The FHA or the HUD insures the full value of these loans and requires certain servicing practices for the loans that those agencies insure. (Am. Compl. ¶ 31.) For FHA-insured deeds of trust in Virginia, foreclosure proceedings and loan acceleration may not occur if prohibited by HUD regulations. (Am. Compl. ¶ 33-34.) One such regulation requires a face-to-face meeting with the mortgagor or a reasonable attempt to arrange such a face-to-face meeting before foreclosure proceedings may occur. (Am. Compl. ¶ 35.) This face-to-face requirement is incorporated as a condition precedent to foreclosure under an FHA-insured deed of trust. (Am. Compl. ¶ 37.)

Plaintiffs George Boyd, Michael Morgan, Myra Washington, Ida Beverly, Laura Wilson, and Anthony and Carolyn Reid (collectively "FHA Plaintiffs") all had FHA-insured mortgage loans secured by identical deeds of trust. (Am. Compl. ¶ 52.) PHH Mortgage, Wells Fargo and Century 21 serviced FHA Plaintiffs' loans and each servicer maintained a branch office within 200 miles of FHA Plaintiffs' homes. (Am. Compl. ¶ 56.)

FHA Plaintiffs' servicers or note-holders did not arrange for face-to-face meetings before proceeding with the foreclosures. (Am. Compl. ¶ 38.) Because the face-to-face meeting condition precedent had not been attempted or accomplished, the deeds of trust did not authorize foreclosure. (Am. Compl. ¶ 40.) Defendants were aware of the additional FHA requirement and knew or should have known that the mortgage companies did not comply with the FHA

3

requirement. (Am. Compl. ¶ 41.) Defendants either failed to inquire about the completion of a meeting or ignored the meeting's requirement under the deeds of trust in an attempt to conduct foreclosures at a cheaper cost and with greater speed. (Am. Compl. ¶ 42.) As alleged, Defendants breached their fiduciary duty to FHA Plaintiffs by proceeding with foreclosures when they were not authorized to do. (Am. Compl. ¶ 42.)

The Department of Veterans Affairs ("VA") also guarantees loans. (Am. Compl. ¶ 44.) VA-insured deeds of trust in Virginia incorporate VA regulations that require a similar face-to-face meeting if the note-holder has not evaluated the borrower's financial circumstances. (Am. Compl. ¶¶ 45-47.)

Plaintiff Ronnie Draper had a loan guaranteed by the VA. (Am. Compl. ¶ 54.) Loan Care Servicing serviced Plaintiff Draper's loan and neither evaluated him for loss mitigation nor made a reasonable effort to arrange a face-to-face meeting. (Am. Compl. ¶ 55.) No face-to-face meeting was attempted. (Am. Compl. ¶ 59.)

Defendants' mortgage company clients did not comply with the additional VA requirement. (Am. Compl. ¶ 49.) Defendants either failed to inquire about the completion of a meeting or ignored the meeting requirement under the deed of trust in an attempt to conduct the foreclosure at a cheaper cost and with greater speed. (Am. Compl. ¶ 50.) As alleged, Defendants breached their fiduciary duty to Plaintiff Draper by proceeding with foreclosure when they were not authorized to do so. (Am. Compl. ¶ 51.)

Lender Processing Services, Inc. ("LPS") operates as a company that assembles information used in foreclosure on consumer properties. (Am. Compl. ¶ 64.) LPS provides technology platforms, including the Mortgage Servicing Package and LPS Desktop, to assist in administering all aspects of loan servicing. (Am. Compl. ¶ 65.) LPS Desktop aids mortgage

4

servicers with mortgage loans that are in default. (Am. Compl. ¶ 66.) LPS Desktop automates and monitors all tasks in the foreclosure process, including deadlines and timeframes for foreclosure events. (Am. Compl. ¶ 66.)

When a mortgage loan goes into default, LPS Desktop refers the loan for foreclosure to a law firm or a trustee company within LPS's network of firms. (Am. Compl. ¶ 70.) Upon acceptance of a referral, LPS charges the network firm an administration fee. (Am. Compl. ¶ 73.) LPS Desktop then sends to the network firm a referral package containing the loan servicer's information related to the particular mortgage loan, including copies of the note and screenshots of the unpaid balance. (Am. Compl. ¶ 74.)

Defendant SBA is a law firm within LPS's network and utilizes LPS's technology platforms. (Am. Compl. ¶¶ 71, 86.) LPS refers to Defendant SBA mortgage loans for foreclosure. (Am. Compl. ¶ 85.) Defendant SBA uses the LPS Desktop platform to perform foreclosures. (Am. Compl. ¶ 86.)

Once the mortgage loan has been referred to Defendant SBA, a "Substitute Trustee" document is created. (Am. Compl. ¶ 95.) Defendant SBA or Defendant SBA's employees create and sign many of these documents as attorney-in-fact for the noteholder. (Am. Compl. ¶ 97.) Individuals signing or purporting to notarize these substitute trustee documents do not do so personally. (Am. Compl. ¶ 98.) Additionally, the individuals signing the sworn statements on the substitute trustee document purporting to have personal knowledge of the facts contained therein lacked such personal knowledge. (Am. Compl. ¶ 102.) Then, Defendant PFC would often auction off the property and collect the maximum trustee fee prescribed under the Virginia Code. (Am. Compl. ¶ 92.)

As part of the foreclosure process, Defendants run title searches on Plaintiffs' properties. (Am. Compl. ¶ 120.) Plaintiff Shelagh Payne received two correspondences that included foreclosure costs, including title costs in the amount of $375 and $325. (Am. Compl. ¶¶ 116-17.) According to Plaintiffs' counsel's research, the reasonable and customary fee for title searches is no more than $100. (Am. Compl. ¶ 123.) Defendants charge the maximum amount for title examinations allowed by servicing guidelines. (Am. Compl. ¶ 124.) After the foreclosure sale occurred, these title fees were passed on to Plaintiffs. (Am. Compl. ¶ 125.)

Defendants now move to dismiss Plaintiffs' claims related to breach of fiduciary duty by foreclosing before the face-to-face meeting condition precedent had been met, as well as those related to breach of fiduciary duty and statutory claims for title examination fees. (Defs.' Mem. in Supp. of Their Partial Mot. to Dismiss Pls.' First Am. Compl. ("*Moore* Mem.") (ECF No. 69) at 10-31; Defs.' Mem. in Supp. of Their Partial Mot. to Dismiss Pls.' Class Action Compl. (ECF No. 12) ("*Burke* Mem.") at 10-24.)[2] Plaintiffs respond that they adequately pleaded causes of action and ask this Court to deny Defendants' Motion. (Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") (ECF No. 70) at 3-20.)[3]

---

[2]     At the initial pretrial conference, the Court notified the parties that it would not impose page limits and notified Defendants that they may incorporate by reference any motion dismiss and brief in support thereof from *Burke v. Shapiro, Brown & Alt, LLP*, 3:14cv838. *Burke*, although not consolidated with this case, is a companion case involving the same fiduciary duty claim related to the face-to-face meeting requirement.

[3]     Defendants also moved to dismiss several individual Plaintiffs alleging that statutes of limitation barred the claims and that certain Plaintiffs lacked standing due to bankruptcy proceedings. (*Moore* Mem. at 32-38.) Plaintiffs stated they withdraw the allegations in the Amended Complaint as it relates to Defendants' argument. (Pls.' Opp'n at 3 n.2.) Accordingly, the Court will not specifically address the arguments related to those Plaintiffs in this Memorandum Opinion.

## II.  STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570.  In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004).  Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.  PROCEDURAL HISTORY

Beginning as nine separate cases, the Honorable Arenda L. Wright Allen, United States District Judge, had consolidated seven cases[4] into the above styled case for purposes of pretrial

---

[4]     Those cases are: *Sandra Waters-Levy v. Law Offices of Shapiro & Burson LLP*, 4:12cv45, *Valentyna Gudym v. Law Offices of Shapiro, Brown & Alt, LLP, et al.*, 4:12cv85, *Shelagh Payne v. Law Offices of Shapiro, Brown & Alt, LLP, et al.*, 4:12cv87, *Inmer E. Campus-Carranza v. Federal Home Loan Mortgage Corporation, et al.*, 4:12cv94, *Glenn T. MacNaughton v. Law Offices of Shapiro, Brown & Alt, LLP, et al.*, 4:12cv95, *Christian Andrade, et al. v. Shapiro & Burson, LLP, et al.*, 2:11cv523, and *George Boyd, et al. v. Law Offices of Shapiro, Brown & Alt LLP, et al.*, 2:13cv273.

management and settlement. *Natkai Akbar v. Law Offices of Shapiro & Burson, LLP*, 4:12cv53, had not yet been consolidated. Those nine cases, pending in the Norfolk Division and Newport News Division of this Court, were related to *DeCapri v. Law Offices of Shapiro Brown & Alt, LLP*, 3:14cv201, which was and is currently pending in the Richmond Division of this Court. On December 15, 2014, in the interest of justice and upon consent of the parties, Judge Allen transferred the nine cases pending in the Norfolk Division and Newport News Division to the undersigned in the Richmond Division. (Omnibus Order (ECF No. 59).) The undersigned then directed the parties in the consolidated cases and in *Akbar* to proceed under the above styled case. (Omnibus Order (ECF No. 60).) After an initial pretrial conference, the Court entered an Amended Scheduling Order (ECF No. 64), directing Plaintiffs to file an Amended Complaint and setting out a briefing schedule for responsive pleadings by Defendants.

## IV.     DISCUSSION

### A.  Applicable Law

Plaintiffs bring suit pursuant to 28 U.S.C. § 1331, invoking this Court's federal question jurisdiction. (Am. Compl. ¶ 4.) Plaintiffs also bring state law claims pursuant to 28 U.S.C. § 1367, invoking this Court's supplement jurisdiction. (Am. Compl. ¶ 4.) When addressing claims under supplemental jurisdiction, the Court must apply state law to those claims. *Poindexter v. Mercedes-Benz Credit Corp.*, __ F. 3d __, 2015 WL 4081208, at *2 n.2 (4th Cir. July 7, 2015). Accordingly, the Court will apply Virginia law to those claims.

### B.  Analysis

In this case, Plaintiffs bring several claims — on both a class and individual basis — against Defendants for common law and statutory violations. Plaintiffs bring these claims against Defendants, arguing that Defendant PFC simply constitutes a sham company operating as

8

the alter ego of Defendant SBA. Accordingly, before assessing the merits of Plaintiffs' causes of action, the Court undertakes to determine whether Plaintiffs have stated a claim under this alter ego theory. After determining whether Plaintiffs have stated a claim for alter ego liability, the Court will address the merits of Plaintiffs' claims related to the face-to-face meeting requirement and the title examination fees.

       1. Plaintiffs state a claim for alter ego liability.

Defendants contend that Plaintiffs fail to allege sufficient facts to show that Defendant PFC exists as the alter ego of Defendant SBA. (*Moore* Mem. at 24 n.13; *Burke* Mem. at 8 n. 8.) Instead, Defendants argue that Plaintiffs' alleged facts are merely conclusory and fail to allege one of the enumerated justifications for veil-piercing in Virginia. (Defs.' Reply in Supp. of Their Partial Mot. to Dismiss Pls.' First Am. Class Compl. ("Defs.' Reply") (ECF No. 71) at 15-16.) Plaintiffs respond that they have sufficiently alleged that Defendant PFC operates as the alter ego of Defendant SBA. (Pls.' Opp'n at 20.) The Court agrees with Plaintiffs at this stage of the litigation.

In Virginia, courts should ignore the corporate structure and impose personal liability on shareholders of an entity "only when necessary to promote justice." *O'Hazza v. Exec. Credit Corp.*, 246 Va. 111, 115, 431 S.E.2d 318, 320 (1993) (quoting *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987)).[5] Although no single rule or criterion exists to justify piercing the corporate veil, to disregard the corporate entity, a party must show that the shareholder "controlled or used the corporation to evade a personal obligation, to

---

[5]    Generally, Virginia law treats piercing the corporate veil of traditional corporations and other limited liability entities in the same manner. *See C.F. Trust, Inc. v. First Flight L.P.*, 266 Va. 3, 12, 580 S.E.2d 806, 811 (2003) (noting that piercing of veil justified where "separate personalities of the corporation and/or limited partnership and the individual no longer exist"); *In re White*, 412 B.R. 860, 864-65 (W.D. Va. 2009) (noting that courts may pierce veil of a limited liability company).

perpetuate a fraud or crime, to commit an injustice, or to gain an unfair advantage." *Id.* Each case is unique, requiring an "examination of the particular factual circumstances surrounding the corporation and the acts in questions." *Id.* at 115, 431 S.E.2d at 321. Further, the Virginia Supreme Court has consistently held that those seeking to pierce the corporate veil must meet "very stringent" requirements to succeed on such an "extraordinary measure." *C.F. Trust, Inc. v. First Flight L.P.*, 266 Va. 3, 10, 580 S.E.2d 806, 810 (2003) (quoting *Greenberg v. Commonwealth of Virginia*, 255 Va. 594, 604, 499 S.E.2d 266, 272 (1998)) (internal quotation marks omitted).

As alleged, attorneys and principals from Defendant SBA created Defendant PFC. (Am. Compl. ¶ 17.) Defendant PFC only acts as substitute trustee for deeds of trust where Defendant SBA has been retained for debt collection and foreclosure proceedings. (Am. Compl. ¶ 23.) Defendant PFC maintains no separate office from Defendant SBA and derives little to no income outside of business with Defendant SBA. (Am. Compl. ¶¶ 20, 22.) Additionally, Defendant PFC has no separate assets outside of Defendant SBA. (Am. Compl. ¶¶ 20, 24.)

As alleged, LPS aids mortgage servicers with mortgage loans that are in default. (Am. Compl. ¶ 66.) LPS Desktop refers these mortgage loans that are in default to a law firm or trustee company within LPS's network of firms. (Am. Compl. ¶ 70.) Defendant SBA is a law firm within LPS's network and uses LPS's technology platforms in performing foreclosures. (Am. Compl. ¶¶ 71, 86.) LPS refers to Defendant SBA mortgage loans for foreclosure. (Am. Compl. ¶ 85.) Once the mortgage loan has been referred, a "Substitute Trustee" document is created, many of which Defendant SBA's employees create and sign. (Am. Compl. ¶ 95, 97.) According to Plaintiffs, individuals signing sworn statements on the substitute trustee document and purporting to have personal knowledge of the facts contained therein lacked such personal

10

knowledge. (Am. Compl. ¶ 102.) Defendant PFC would then auction off the property and collect the requisite fees. (Am. Compl. ¶ 92.)

Taking Plaintiffs' alleged facts as true as the Court must at this stage, Defendants structurally operate with a unity of purpose — namely foreclosing on mortgage loans. Further, Plaintiffs allege that Defendants create fraudulent substitute trustee documents, appointing Defendant PFC as trustee to continue with the foreclosure sale. Accordingly, at this stage, Plaintiffs sufficiently allege facts such that Defendant SBA used Defendant PFC to perpetrate a fraud, namely fraudulently appointing Defendant PFC as substitute trustee to foreclose on Plaintiffs' properties. Although the Court finds that Plaintiffs pleaded facts sufficient to survive a motion to dismiss, the Court reiterates that a Rule 12(b)(6) motion tests the sufficiency of the complaint, rather than the merits of Plaintiffs' claims. *Pa. Int'l Educ. Grp., LLC v. Xie*, 2015 WL 1119773, at *1 (E.D. Va. Mar. 11, 2015) (quoting *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012)). Whether Plaintiffs ultimately can meet their burden and prove such facts to meet the "very stringent" requirements of alter ego liability under Virginia law warranting the "extraordinary measure" of piercing the corporate veil remains a question for another day. *C.F. Trust, Inc.*, 266 Va. at 12, 580 S.E.2d at 811.

2. A trustee owes a duty of impartiality.

In Count I of the Amended Complaint, Plaintiffs assert that Defendants breached their fiduciary duty to Plaintiffs by conducting foreclosures before conditions precedent set forth in the deed of trust had been met and for charging excessive title examination fees. (Am. Compl. ¶ 150.) Defendants contend that the only duties that exist for a trustee are those specifically enumerated in the applicable deed of trust, that the duties of impartiality and due diligence are not enumerated in Virginia deeds of trust and, therefore, foreclosure trustees owe no such duties

to borrowers. (*Moore* Mem. at 10-11; *Burke* Mem. at 8-24.) Relying heavily upon *Squire v. Virginia Housing Development Authority*, 287 Va. 507, 758 S.E.2d 55 (2014), Plaintiffs respond that the Amended Complaint plausibly alleges a claim for breach of fiduciary duty against Defendants. (Pls.' Opp'n at 5-10.)

To recover on a breach of fiduciary duty claim in Virginia, a plaintiff must show that a duty exists, that the duty was breached and that the breach caused damages. *Carstensen v. Chrisland Corp.*, 247 Va. 433, 434-44, 442 S.E.2d 660, 666 (1994). Here, the parties focus their dispute on the actual existence of the duty. The parties' contentions highlight the "somewhat conflicting statements in Virginia case law" regarding a trustee's alleged fiduciary duties under a deed of trust. *Mayo v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 485, 495 (E.D. Va. 2014). Before addressing the applicability of any duty of impartiality owed by a substitute trustee to Plaintiffs' claims, the Court must first determine whether such a duty exists and the extent to which that duty applies.

In Virginia, courts construe a deed of trust as a contract. *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 733, 724 S.E.2d 196, 200-01 (2012) (citing *Va. Housing Dev. Auth. v. Fox Run Ltd. P'shp*, 255 Va. 356, 365, 497 S.E.2d 747, 753 (1998)). A trustee's powers and duties "are limited and defined by the instrument" under which the trustee acts. *Warner v. Clementson*, 254 Va. 356, 361, 492 S.E.2d 655, 657 (quoting *Powell v. Adams*, 179 Va. 170, 174, 18 S.E.2d 261, 262-63 (1942)). To foreclose under a mortgage or deed of trust, a trustee only has such authority as is "expressly conferred" on the trustee. *Schmidt & Wilson, Inc. v. Carneal*, 164 Va. 412, 415, 180 S.E.2d 325, 326 (1935). Additionally, as a matter of law, when a deed of trust expressly forbids acceleration or foreclosure unless permitted under "some external set of conditions identified within the deed of trust, those conditions are fully incorporated as conditions precedent

to acceleration and foreclosure" into the deed of trust. *Mathews*, 283 Va. at 736, 724 S.E.2d at 202. Further, the Virginia Supreme Court has made clear that no cause of action lies for a breach of fiduciary duty where the alleged fiduciary duty existed solely from a contractual relationship. *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 207-08, 645 S.E.2d 290, 295 (2007).

The Virginia Supreme Court, however, has also indicated that a trustee under a deed of trust acts as "a fiduciary for both debtor and creditor and must act impartially between them." *Whitlow v. Mountain Trust Bank*, 215 Va. 149, 152, 207 S.E.2d 837, 840 (1974) (citing *Linney v. Normoyle*, 145 Va. 589, 593, 134 S.E. 554, 555 (1926); *Rohrer v. Strickland*, 116 Va. 755, 759, 82 S.E. 711, 712 (1914)). And, prior case law has described the trustee as an "agent of both debtor and creditor" that must act impartially between the two. *Powell*, 179 Va. at 174, 18 S.E.2d at 263-64 (citing *Preston v. Johnson*, 105 Va. 238, 53 S.E. 1 (1906)).

Relying on the contract interpretation of the deed of trust, Defendants argue that Plaintiffs fail to state a claim for breach of fiduciary duty, because none exists within the deed of trust itself. (*Moore* Mem. at 10-12; *Burke* Mem. at 8-10.) Indeed, several federal district courts have followed this approach in finding that trustees owe no fiduciary duty to a debtor outside of those enumerated in a deed of trust. *See, e.g., Redman v. Fed. Nat'l Mortg. Ass'n*, 2015 WL 149833, at *4 (W.D. Va. Jan. 12, 2015) ("Under Virginia law . . . such [fiduciary] duties are limited to those set forth in the deed of trust itself."); *Sheppard v. BAC Home Loan Servicing LP*, 2012 WL 204288, at *7 (W.D. Va. Jan. 24, 2012) ("[T]he deed of trust spells out the powers and duties of the trustee with respect to the sale of property following the initiation of foreclosure. There is no duty (labeled fiduciary or otherwise) found in the deed of trust requiring the trustee to ensure either that it was properly appointed or that the entity invoking the sale is the secured party with authority to foreclose."); *Horvath v. Bank of N.Y., N.A.*, 2010 WL 538039, at *1 (E.D.

13

Va. Jan. 29, 2010) ("Under Virginia law, however, a trustee under a deed of trust has no such duty of [due] diligence, and trustees only owe duties listed in the deed of trust.").

Plaintiffs contend, however, that trustees do owe fiduciary duties outside of the deed of trust, namely that of impartiality. (Pls.' Mem. at 5-6.) Plaintiffs rely on case law indicating that trustees, in fact, are fiduciaries to debtors and creditors alike and that trustees owe the duty of impartiality. (Pls.' Mem. at 6-11.) Indeed, the Virginia Supreme Court has indicated as much. *See Whitlow*, 215 Va. at 152, 207 S.E.2d at 840 (noting that trustee acts as a fiduciary for "both debtor and creditor and must act impartially between them"); *see also Powell*, 179 Va. at 174, 18 S.E.2d at 263-64 (noting that trustee serves as an agent of both debtor and creditor and must act with fairness and impartiality). Albeit in *dicta*, at least one federal district court has noted that Virginia law allows for a party to seek a breach of fiduciary duty claim against a substitute trustee. *Vaughn v. U.S. Bank N.A.*, 2015 WL 1349953, at *3 (E.D. Va. Mar. 24, 2015). Without explicitly recognizing the existence of a duty of impartiality, another federal district court recently acknowledged the discordant precedent regarding the existence of such a duty and, therefore, cautioned against outright dismissal of such claims at the pleading stage. *Goodrow v. Friedman & MacFadyen, P.A.*, 2013 WL 3894842, at *16 (E.D. Va. July 26, 2013) ("While this court questions whether such statements will ultimately support the existence of a common law duty of impartiality, the discordant precedent caution toward dismissal at this early procedural juncture."). Given the factual similarities to this case, Plaintiffs also point to the Virginia Supreme Court's recent decision in *Squire* to support their position. (Pls.' Mem. at 5-6.)

In *Squire*, plaintiff brought suit against the substitute trustee for breach of fiduciary duty when the substitute trustee had proceeded with foreclosure even though conditions precedent — specifically, a face-to-face meeting — articulated in the deed of trust had not yet been satisfied.

14

287 Va. at 512-13, 758 S.E.2d at 57-58. The trial court dismissed plaintiff's claim. *Id.* at 513-14, 758 S.E.2d at 58-59. Although it focused on pleading requirements, the Virginia Supreme Court reversed the dismissal, thereby restoring plaintiff's claim for breach of fiduciary duty. *Id.* at 518, 758 S.E.2d at 61.

The Court, therefore, must endeavor to reconcile these apparently "conflicting statements in Virginia case law" regarding a trustee's duties under a deed of trust. *Mayo*, 30 F. Supp. 3d at 496. The Court finds the rationale articulated in *Mayo v. Wells Fargo, N.A.* persuasive. In that case, the court recognized that, generally, a trustee's powers and duties are limited by the deed of trust itself. *Id.* at 495. The Virginia Supreme Court, however, has "repeatedly noted that a trustee named in a deed of trust [wa]s a fiduciary for both the debtor and the creditor." *Id.* at 496 (citing *Whitlow*, 215 Va. at 152, 207 S.E. 2d at 840). Because Virginia courts have stressed that a substitute trustee's powers and duties were limited to the deed of trust, but also noted that the trustee's role as a fiduciary for both debtor and creditor, the Court in *Mayo* did not incorporate all common law duties of a traditional trustee, but rather only those duties "specifically recognized in the context of a deed of trust." *Id.* at 496. The Court took that approach, because a mortgage, deed of trust or other similar security arrangement more closely resembled a business arrangement, rather than a traditional fiduciary arrangement. *See id.* (quoting Amy Hess et al., *Bogert's Trusts and Trustees, The Law of Trusts and Trustees* § 29 (2013); Restatement (Third) of Trusts § 5 (2003)).

The approach in *Mayo* also does not conflict with the Virginia Supreme Court's later decision in *Squire*, which lends at least some support to the argument that a debtor may proceed against a trustee for a breach of fiduciary duty. *See* 287 Va. at 518, 758 S.E.2d at 61 ("[T]he trial court erred in sustaining . . . the demurrer filed by [trustee] as to [plaintiff]'s breach of fiduciary

15

duty claim."); *see also Vaughn v. U.S. Bank N.A.*, 2015 WL 1349953, at *3 (E.D. Va. Mar. 24, 2015) (citing *Squire*, 287 Va. at 521, 758 S.E.2d at 63) (remanding case to state court and stating in *dicta* that claim for breach of fiduciary duty against substitute trustee to deed of trust was "viable cause of action under Virginia law"); *Goodrow*, 2013 WL 3894842, at *16 (questioning whether statements ultimately supported duty of impartiality but noting that discordant precedent cautioned against dismissal of claim at pleading stage). Although the opinion focused on pleading requirements, the Virginia Supreme Court did restore a breach of fiduciary duty claim against a substitute trustee, suggesting that trustees owe a fiduciary duty to a debtor.[6]

As in *Mayo*, the Court will not incorporate all of the common law duties of a traditional fiduciary, but rather only those that Virginia common law has specifically recognized in the deed of trust context. In the context of a deed of trust securing real property, the only duty that the Virginia Supreme Court has imposed upon a trustee is that of impartiality. *See, e.g., Whitlow*, 215 Va. at 152-54, 207 S.E.2d at 840-41. The Virginia Supreme Court has indicated that

> [t]he general rule concerning the position of a trustee under a deed of trust is that the trustee is a fiduciary for both debtor and creditor and must act impartially between them. *Rohrer v. Strickland*, 116 Va. 755, 759, 82 S.E. 711, 712 (1914); *Linney v. Normoyle*, 145 Va. 589, 593, 134 S.E. 554, 555 (1926). Implicit in this rule is the proposition that a trustee must refrain from placing himself in a position where his personal interest conflicts with the interests of those for whom he acts a fiduciary.

*Id.* at 152, 207 S.E.2d at 840. Accordingly, a trustee owes the duty of impartiality such that the trustee must refrain from exploiting its position as a neutral during the foreclosure process.

---

[6]  Further, then-Chief Justice Kinser, joined by current Chief Justice Lemons and Justice McClanahan, dissented in part and concurred in part. *Squire*, 287 Va. at 521-28, 758 S.E.2d at 63-67. Chief Justice Kinser opined that the allegations failed to show that the failure to hold the face-to-face meeting caused the foreclosure; however, she agreed with the majority on all other issues. *Id.* at 521, 758 S.E.2d at 63. Notably, the vigorous dissent makes no challenge to the existence of a fiduciary duty owed by a trustee.

### 3. Face-to-Face Meeting Requirement

Defendants argue that Plaintiffs fail to state a claim for breach of fiduciary duty for foreclosing on Plaintiffs' properties before conditions precedent enumerated in the deeds of trust had been satisfied. (*Moore* Mem. at 10-18; *Burke* Mem. at 7-24.) Plaintiffs respond that the Amended Complaint plausibly alleges a breach of fiduciary duty by Defendants. (Pls.' Opp'n at 5-10.) The Court finds that Plaintiffs fail to state a claim for breach of fiduciary duty related to the face-to-face meeting requirement.

Virginia law treats a deed of trust as a contract. *Mathews*, 283 Va. at 733, 724 S.E.2d at 200-01 (citing *Fox Run Ltd. P'shp*, 255 Va. at 365, 497 S.E.2d at 753). Additionally, a deed of trust expressly forbidding foreclosure unless permitted by "some external set of conditions identified within the deed of trust" fully incorporates those conditions into the deed of trust. *Id.* at 736, 724 S.E.2d at 202. Additionally, no cause of action lies where the alleged fiduciary duty arises solely from a contractual relationship. *Augusta Mut. Ins. Co.*, 274 Va. at 207-08, 645 S.E.2d at 295.

Here, Plaintiffs assert that Defendants failed to comply with HUD regulations and VA regulations that had been incorporated into Plaintiffs' deeds of trust. (Am. Compl. ¶¶ 33-35, 37-38, 44-47, 49.) Defendants did not comply with these conditions precedent before foreclosing. (Am. Compl. ¶¶ 42, 50.) According to Plaintiff, Defendants breached their fiduciary duty of impartiality by proceeding with the foreclosures when not authorized to do so by conducting foreclosures due to pricing incentives and forced compliance with unreasonable timelines. (Am. Compl. ¶¶ 43, 51, 150.)

The essence of Plaintiffs' claim rests upon the assertion that Defendants did not satisfy conditions precedent to foreclosure that the deeds of trust specifically enumerated. Because

Virginia law treats a deed of trust as a contract and because Plaintiffs seek to recover on a breach of the enumerated terms of the deeds of trust, Plaintiffs' claim on this point sounds in contract, not tort. *See Augusta Mut. Ins. Co.*, 274 Va. at 207-08, 645 S.E.2d at 295 (noting that no cause of action lies where alleged fiduciary duty arises solely from a contractual relationship). Accordingly, the Court will dismiss Count I of Plaintiffs' Amended Complaint related to breach of fiduciary duty for failing to satisfy conditions precedent before foreclosing.

### 3. Title Examination Fees Claims

Next, Defendants argue that Plaintiffs have failed to state a claim for breach of fiduciary duty and violation of the FDCPA in Count I and Count IV, related to allegedly unreasonable title examination fees. (*Moore* Mem. at 18-31.) Defendants contend that Plaintiffs' claims must fail for three reasons. First, Plaintiffs' claims in the Amended Complaint do not relate back to an original complaint; therefore, the applicable statute of limitations bars the claim. (*Moore* Mem. at 19-23.) Second, no cause of action exists for breach of fiduciary duty related to these title examination fees. (*Moore* Mem. at 23-26.) Finally, Plaintiffs do not plausibly assert that any title examination fees were unreasonable. (*Moore* Mem. at 26-31.) Plaintiffs respond that their title examination fees claim relates back, can be enforced against Defendants as a fiduciary duty and plausibly alleges that the title examination fees were unreasonable. (Pls.' Opp'n at 11-20.) The Court addresses each argument in turn.

#### a. Plaintiffs' title examination fees claim relate back to an original complaint.

Defendants contend that Plaintiffs' title examination fee claim in the Amended Complaint does not relate back to the original complaint; therefore, the Court must dismiss the claim as time-barred under the FDCPA's one year statute of limitations. (*Moore* Mem. at 19-23.) Defendants argue that Plaintiffs seek to hold Defendants liable for the first time in the

18

Amended Complaint for charging amounts for title examinations beyond the customary rate and inflating title costs. (*Moore* Mem. at 20.) Plaintiffs respond that the claims relate back to the original complaint in one of the consolidated cases, *Boyd v. Law Offices of Shapiro, Brown, and Alt, LLP*. (Pls.' Opp'n at 11-20.) Specifically, Plaintiffs argue that the claim arises from the same conduct, transaction or occurrence, namely Defendants' misrepresentations and misconduct during the foreclosure process. (Pls.' Opp'n at 14-15.)

Federal Rule of Civil Procedure 15 provides that an amendment of a pleading relates back to the date of the original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amendment fails to relate back when "alleg[ing] new causes of action arising out of 'wholly different conduct' from that alleged in the original complaint." *Perry v. Am. Airlines, Inc.*, 405 F. Supp. 2d 700, 704 (E.D. Va. 2005) (citing *United States. v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000)). The relation back requirement seeks to "balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538, 550 (2010).

Rule 15 seeks to ensure that a factual nexus exists between the amendments and the prior pleading and that a defendant had sufficient notice of new claims such that defendant does not suffer prejudice. *Vitullo v. Mancini*, 684 F. Supp. 2d. 747, 754 (E.D. Va. 2010) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 469-70 (4th Cir. 2007) (en banc); *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983); *Davis v. Piper Aircraft Corp.*, 615 F.2d. 606, 614 (4th Cir. 1980)). A defendant suffers no prejudice so long as he is fully apprised of a claim arising from specific

19

conduct. *Id.* When the amendment pleads a new cause of action, the amendment is not

prejudicial "if it merely adds an additional theory of recovery to the facts already pled and is

offered before any discovery has occurred." *Id.* (quoting *Laber v. Harvey*, 438 F.3d 404, 427

(4th Cir. 2006)); *see also Goodrow v. Friedman & MacFayden, P.A.*, 788 F. Supp. 2d 464, 468

(E.D. Va. 2011) (noting that amended complaint related back where it merely "add[ed] some

factual exposition" to allegations in original complaint).

As alleged in the Amended Complaint, Plaintiff Shelagh Payne received a reinstatement

figure correspondence from Defendants stating that the total reinstatement figure included

$375.00 in title costs. (Am. Compl. ¶ 116.)  Plaintiff Payne also received a second

correspondence stating that the total reinstatement figure included $325.00 in title costs. (Am.

Compl. ¶ 117.)  Plaintiffs allege that these two figures constitute the amount that Defendants

charged for a title examination. (Am. Compl. ¶ 121.)  In the Amended Complaint, Plaintiffs

allege on a class basis in Count I that Defendants breached their fiduciary duty to Plaintiffs by

"falsely and deceptively charging amounts for title examination fees beyond the customary rate

and/or for inflating costs actually paid." (Am. Compl. ¶ 150.)  Plaintiffs allege on a class basis

in Count IV that Defendants violated the FDCPA by "falsely and deceptively charging amounts

for title examinations beyond the customary rate[,] for inflating the actual costs actually [sic]

paid and/or by falsely and deceptively representing different amounts were incurred when

providing consumers with reinstatement and payoff statements." (Am. Compl. ¶ 181.)

Defendants assert that the title examination claim in the Amended Complaint does not

relate back to Plaintiff Payne's original complaint, because this is the first time that Plaintiffs

have sought to hold Defendants liable for charging amounts for title examinations beyond the

customary rate and inflating title costs. (*Moore* Mem. at 20.)  Plaintiffs respond that the

Amended Complaint relates back to the *Boyd* Complaint, rather than to Plaintiff Payne's original complaint, and that Plaintiffs' claims stem from the same conduct, namely Plaintiffs' misrepresentations and misconduct during the foreclosure process. (Pls.' Opp'n at 11-15.) The *Boyd* Complaint asserted a class claim against Defendants for violation of the FDCPA — specifically 15 U.S.C. §§ 1692e and 1692f — which included a "False Statement about Fees" class and, as such, the Amended Complaint relates back and is properly pleaded. (Pls.' Opp'n at 12-13.)

The *Boyd* Complaint defined the "False Statement about Fees" class as all persons to whom Defendants sent a letter regarding possible foreclosure and thereafter either demanded or accepted fees of any amount. (Class Compl. ("*Boyd* Compl.") (ECF Nos. 1, 2) ¶ 1914.) The *Boyd* Complaint asserted that Defendants violated the FDCPA as to this class, because Defendants made false statements about the amount of fees to those individuals or in the accounting statements to the Commissioners of Accounts, in which the fees related to the foreclosures where there was no right to foreclose or no valid substitute trustee appointment. (*Boyd* Compl. ¶ 1915.)

The Amended Complaint relates back to the *Boyd* Complaint insofar as the amendment arises out of the same conduct as the original pleading. Plaintiffs assert that Defendants falsely and deceptively violated identical provisions of the FDCPA in both the Amended Complaint and *Boyd* Complaint. The alleged violations in both complaints stemmed from the alleged misrepresentation of the debt owed as represented in payoff statements — specifically fees and costs. Essentially, Plaintiffs seek a different theory of recovery under the same statutory provisions based upon the same conduct. Thus, the *Boyd* Complaint sufficiently put Defendants on notice that Plaintiffs would seek recovery under the FDCPA related to allegedly charged fees.

Additionally, Defendants are not prejudiced, because the parties have agreed to, and the Court has granted, a stay related to discovery on the title examination fee issue in this case. (ECF No. 74.)

> b. Plaintiffs state a claim for breach of fiduciary duty.

Defendants argue that Plaintiffs fail to state a claim for breach of fiduciary duty related to the unreasonable title examination fees, because no such duty exists. (*Moore* Mem. at 23-26.) Plaintiffs contend that Defendants owe a fiduciary duty and that Defendants breached that fiduciary duty by charging excessive title examination fees. (Pls.' Opp'n at 11-20.) At this point and with all inferences in favor of Plaintiffs, the Court agrees that Plaintiffs have stated a claim for breach of fiduciary duty.

To recover on a breach of fiduciary duty, a plaintiff must show the existence of a duty, breach of that duty and resulting damages. *Carstensen*, 247 Va. at 434-35, 442 S.E.2d at 666. As discussed fully in Section IV.B.2., Virginia common law imposes a duty of impartiality on a trustee during the foreclosure process. A trustee acts as a fiduciary for both the debtor and creditor. *Whitlow*, 215 Va. at 152, 207 S.E.2d at 840. A trustee must refrain from placing itself in a position where its personal interest conflicts with the interests of the buyer and seller. *Id.*. A trustee owes the duty of impartiality such that the trustee must refrain from exploiting its position as neutral during the foreclosure process.

According to the Amended Complaint, LPS refers mortgage loans for foreclosure to Defendant SBA. (Am. Compl. ¶ 85.) Using fraudulent substitute trustee documents, Defendant SBA is appointed substitute trustee. (Am. Compl. ¶¶ 95, 102.) Defendant SBA then auctions off the property and collects the maximum trustee fee allowable under Virginia law. (Am. Compl. ¶ 92.)

As alleged, Defendant PFC acts as the alter ego of Defendant SBA. *See supra* Section IV.B.1. During the foreclosure process, Defendants run title searches on Plaintiffs' properties. (Am. Compl. ¶ 120.) Plaintiff Payne received two correspondences indicating that title costs amounted to either $325 or $375. (Am. Compl. ¶¶ 116-17.) As alleged, the reasonable and customary fee for title examinations is no more than $100. (Am. Compl. ¶ 123.) Upon completion of the foreclosure sale, those title examination fees were passed on to Plaintiffs. (Am. Compl. ¶ 125.) Plaintiffs allege that by charging these excess title examination fees, Defendants have breached their fiduciary duty to Plaintiffs. (Am. Compl. ¶ 150.)

Virginia law recognizes that a trustee owes a duty of impartiality to a debtor. The Amended Complaint plausibly asserts that Defendants breached their duty of impartiality. Specifically, the collusive nature of Defendant PFC acting as the alter ego of Defendant SBA and Defendants' charging over three times the market rate for title examination fees tend to show that Defendants exploited their position as trustee during the foreclosure process such that Defendants' personal interest conflicted with Plaintiffs' interests. Therefore, Plaintiffs have plausibly pleaded that Defendants breached the fiduciary duty. Finally, Plaintiffs' have plausibly pleaded resulting damages by alleging that the excessive fees were then passed on to Plaintiffs.

Accordingly, at this early stage in the litigation and giving all inferences to Plaintiffs, Plaintiffs have stated a claim for breach of fiduciary duty related to the title examination fees. Again, although the Court finds that Plaintiffs survive Defendants' motion under such narrow circumstances, the Court reiterates that a Rule 12(b)(6) motion tests the sufficiency of the

complaint and not the merits of Plaintiffs' claims. *Pa. Int'l Educ. Grp., LLC*, 2015 WL 1119773, at *1.[7]

### c. Plaintiffs' state a claim for violation of the FDCPA.

Finally, Defendants argue that Plaintiffs' claims fail as a matter of law, because Plaintiffs do not plausibly assert that the title examination fees were unreasonable. (*Moore* Mem. at 26-31.) Plaintiffs respond that they have sufficiently pleaded that the title examination fees were unreasonable. (Pls.' Mem. at 17-20.)

In the Amended Complaint, Plaintiffs assert that the unreasonable title examination fees violated 15 U.S.C. §§ 1692e(2) and 1692f(1). (Am. Compl. Count Four.) Section 1692e(2) prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the "false representation of the character, amount, or legal status of any debt; or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Section 1692f(1) prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," including the "collection of any amount (including any interest, fee, charge, or expense incidental to principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

---

[7]     The Court recognizes that just because someone pays a charge that is more than he or she may have liked to pay does not necessarily render that charge unreasonable. *See Parham v. HSBC Mortg. Corp.*, 826 F. Supp. 906, 913 (E.D. Va. 2011) (discussing allegedly excessive title fee charges under Truth In Lending Act). This increased charge may certainly be a function of different entities charging different prices for the same services, the quality of the work produced, the reputation of the entity used or any number of other factors in a complex financial transaction. *See id.* However, those explanations are proof issues for the summary judgment and trial stages — not the pleading stage. Standing alone and without more, Plaintiffs' claims must survive.

The Amended Complaint asserts that LPS refers mortgage loans for foreclosure to Defendant SBA. (Am. Compl. ¶ 85.) Using fraudulent substitute trustee documents, Defendant PFC then becomes substitute trustee. (Am. Compl. ¶¶ 95, 102.) Defendant PFC subsequently auctions off the property, collecting the maximum trustee fee allowable under Virginia law. (Am. Compl. ¶ 92.)

As alleged, Defendant PFC acts as the alter ego of Defendant SBA. *See supra* Section IV.B.1. During the foreclosure process, Defendants run title searches on Plaintiffs' properties. (Am. Compl. ¶ 120.) Plaintiff Payne received two correspondences indicating that title costs amounted to either $325 or $375. (Am. Compl. ¶¶ 116-17.) As alleged, the reasonable and customary fee for title examinations is no more than $100. (Am. Compl. ¶ 123.) Upon completion of the foreclosure sale, those title examination fees were passed on to Plaintiffs. (Am. Compl. ¶ 125.) As alleged, Defendants are debt collectors and violated the FDCPA by "falsely and deceptively charging amounts for title examinations beyond the customary rate[,] for inflating the actual costs actually [sic] paid and/or falsely and deceptively representing different amounts were incurred when providing" Plaintiffs with reinstatement and payoff quotes. (Am. Compl. ¶ 181.)

Giving all inferences to Plaintiffs, they plausibly set forth a violation of the FDCPA for charging excessive title examination fees. As alleged, Defendant PFC acts as the alter ego of Defendant SBA, and Defendants charge nearly three times the market rate for title examination fees during the foreclosure process. Defendants then seek to collect those title examination fees from Plaintiffs. Giving all inferences to Plaintiffs, Defendants use deceptive and unfair means to attempt to collect the debt for the title examination fees from Plaintiffs. Again, testing only the sufficiency of the Amended Complaint and not the merits of Plaintiffs' claim, the Court must

find that Plaintiffs have pleaded sufficient facts to survive Defendants' motion. *Pa. Int'l Educ. Grp., LLC*, 2015 WL 1119773, at *1.

### III.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (ECF No. 68) will be GRANTED in part and DENIED in part.

An appropriate Order shall issue.

Let the Clerk file this Opinion electronically and notify all counsel of record.

It is so ORDERED.

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: <u>August 13, 2015</u>